UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ASHLEY NICOLE HOLLOWAY, ) <br> ) <br> **Claimant,** ) <br> ) <br> vs. ) <br> ) <br> CAROLYN W. COLVIN, Acting ) <br> Commissioner, Social Security ) <br> Administration, ) <br> ) <br> **Defendant.** ) | Civil Action No. CV-12-S-2635-NE |

**MEMORANDUM OPINION AND ORDER OF REMAND**

Claimant, Ashley Nicole Holloway, commenced this action on August 3, 2012, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ") denying her claim for a period of disability and disability insurance benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be reversed, and this case is due to be remanded to the Commissioner for further proceedings.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v.*

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the opinions of her treating psychologist and the consultative psychological examiner. Upon review of the record, the court concludes those contentions have merit.

The opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (internal citations omitted). Good cause exists when "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (alteration supplied). Additionally, the ALJ is not required to accept a conclusory statement from a medical source, even a treating source, that a claimant is unable to work, because the decision whether a claimant is disabled is not a medical opinion, but is a decision "reserved to the Commissioner." 20 C.F.R. § 416.927(e). Social Security regulations also provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the

Commissioner should evaluate:  the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors.  *See* 20 C.F.R. § 404.1527(d).  *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Danny Blanchard, claimant's treating psychologist, completed a "Supplemental Questionnaire" on September 10, 2009.  The introductory paragraph of the questionnaire states:

> This Supplemental Questionnaire is designed to amplify your narrative report and answer certain questions about the patient's residual functional capacity.  It is essential that your answers be based on your estimate of your patient's current psychiatric impairment and not on non-psychiatric medical factors or non-medical factors such as availability of job openings, hiring practices of employers, etc.  Your answers should generally be consistent with your Narrative Report and any discrepancies between the Supplemental Questionnaire and the Narrative Report should be explained.[1]

Though that quotation references a narrative report that the questionnaire is designed to "supplement" and "amplify," no such narrative from Dr. Blanchard can be found

---

[1] Tr. 737.

in the record.

In any event, the questionnaire contained the following rating definitions:

| | |
|---|---|
| MILD: | Suspected impairment of slight importance which does not affect ability to function. |
| MODERATE: | An impairment which affects but does not preclude ability to function. |
| MARKED: | An impairment which seriously affects ability to function. |
| EXTREME: | Severe impairment of ability to function.[2] |

Dr. Blanchard indicated that claimant had *moderate* restriction of activities of daily living; *marked* difficulty in maintaining social functioning; *marked* deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; *marked* impairment of ability to respond to customary work pressures; *marked* (at times) impairment of ability to understand, carry out, and remember instructions in a work setting; *marked* (at times) impairment of ability to respond appropriately to supervision in a work setting; *moderate* impairment of ability to respond appropriately to co-workers in a work setting; *moderate* impairment of ability to perform simple tasks in a work setting; and *moderate* impairment of ability to perform repetitive tasks in a work setting. He also opined that claimant's

---

[2] *Id.*

impairments had lasted, or could be expected to last, twelve months or more without continued therapy.  Claimant's impairment could be attributed to significant stress, depression, and anxiety.[3]

> The vocational expert testified that a person who was
>
> incapable of sustaining sufficient concentration, persistence, and pace that would allow them to perform even simple routine and repetitive tasks on a regular and continuing basis for eight-hours a day for five days a week for a 40-hour work week or any kind of equivalent or alternative work schedule

would be precluded from performing work at any exertional level.[4]  Thus, if the ALJ had credited Dr. Blanchard's opinion that claimant had marked deficiencies of concentration, persistence, and pace, that would have mandated a finding of disability.  However, the ALJ afforded Dr. Blanchard's opinion "little probative weight," reasoning that it was "extreme and inconsistent with findings made in the medical record discussed above.  It is also provided by a physician unfamiliar with Social Security's terms and definitions."[5]

The only findings discussed by the ALJ with regard to claimant's mental condition were the conclusions of the consultative examiner.  The ALJ did not discuss Dr. Blanchard's own records, and did not evaluate whether Dr. Blanchard's

---

[3] Tr. 737-38.
[4] Tr. 96-97.
[5] Tr. 21.

opinion was consistent with those records. Upon review of Dr. Blanchard's records, the court concludes they do provide some support for his conclusions. Dr. Blanchard saw claimant from January to April of 2009. On January 16, 2009, Dr. Blanchard stated that stressors and worry were creating significant difficulty.[6] On January 23, 2009, he stated that depression continued to be a major issue.[7] On January 26, he stated that claimant suffered from continued depression and anxiety, as well as difficulty concentrating and reacting to various changes in her lifestyle.[8] On January 29, claimant was having significant issues with stress, depression, and anxiety.[9] On April 1, she still was having significant problems and difficulties with stress.[10] Upon a fair reading of these records, it cannot be said that they are inconsistent with Dr. Blanchard's assessment.

    The ALJ also reasoned that Dr. Blanchard's opinion was inconsistent with that of the consultative examiner, Dr. David McDonald. During Dr. McDonald's clinical examination, claimant reported "significant depressive symptoms including dysphoric mood, frequent crying spells, chronic anxiety, social withdrawal, feelings of

---

[6] Tr. 230.
[7] Tr. 231.
[8] Tr. 232.
[9] Tr. 233.
[10] Tr. 234.

hopelessness, low energy level and fatigue."[11] The mental status examination revealed the following findings:

> Ms. Holloway is a 22 year old, African-American female who appears her stated age. She is five feet, seven inches tall and weighs 247 pounds. She was casually dressed, but generally neat in appearance, showing and [sic] no deterioration in personal habits. She wore a brace on her right knee. Speech was normal in content, form, and progression. She described her mood as "nervous and sad." She demonstrated a limited range of affect which was appropriate to content of thought and conversation. She appeared at least mildly depressed. She was alert and completely oriented. She was able to slowly perform serial sevens. She performed simple problems in change making and arithmetic without any difficulties. She correctly spelled "world" forwards and backwards. She immediately recalled three objects and was able to recall two of three objects following a five minute delay. She performed six digits forward and four digits backwards on the Digit Span Task. She briefly described her activities on the day prior to the examination. She was able to recall various remote events. She correctly identified the president, the vice president, capitals and the number of months in the year. She did not know how many weeks were in a year. She could not identify any current news events. She identified similarities between paired objects, but could not interpret simple proverbs. There was no evidence of any loose associations, tangential or circumstantial thinking, or confusion. Conversation and speech were within normal limits. There was no evidence or report of any hallucinations, delusions, ideas of reference, grandiosity, or paranoid ideation. She reported significant anxiety and depressive symptoms as previously mentioned. Insight and judgment appeared adequate. Her intelligence was estimated to be in the low average range.[12]

Claimant's reported daily activities were as follows:

---

[11] Tr. 317.

[12] Tr. 317-18 (alteration supplied).

Ms. Holloway usually gets up between 8:00 and 9:00 A.M. She spends most of her time at home alone during the day. She watches television and does various household chores. She may spend a little time on the computer (Facebook, MySpace). She has a very limited social life. She goes to church on a regular basis. She primarily stays with her family. She is looking into doing volunteer work with Big Brothers/Big Sisters. She currently leads a restricted and dependent lifestyle.[13]

Dr. McDonald assessed claimant with dysthymic disorder and anxiety disorder. He assigned claimant a GAF score of 50, indicating serious symptoms and serious impairment. Claimant's prognosis was fair, as her psychiatric symptoms were expected to improve with appropriate treatment.[14] Dr. McDonald's concluding remarks were:

> The limited medical evidence of record provided by the DDS was reviewed and those findings were considered in the overall assessment of the claimant. Ms. Holloway views herself as disabled because of her chronic medical problems and numerous doctor appointments. She stated that she is unable to work on a reliable basis because of her illnesses. Her ability to understand, carry out, and remember instructions appears to be at least mildly impaired at this time. Her ability to interact appropriately with supervisors, co-workers, and work pressures appears to be at least moderately impaired as well. She appears generally capable of managing any financial benefits that she may receive.[15]

The ALJ characterized Dr. McDonald's assessment as indicating that "claimant

---

[13] Tr. 318.
[14] *Id.*
[15] Tr. 319.

is both willing and able to seek employment . . . ."[16]  He also stated that Dr. McDonald's assessment indicates that claimant "is able to maintain normal activities of daily living and socialize independently and that her skills in these areas led her to seek work as a volunteer at that time."[17]  He afforded significant weight to the assessment because it was "consistent with the objective medical evidence, is supported in part by claimant's statements, and is provided by a medical expert familiar with Social Security's terms and definitions."[18]  He also stated that Dr. McDonald's findings were consistent with "the weight of the objective findings in the treatment record."[19]

The ALJ appears to have either misinterpreted or mischaracterized Dr. McDonald's assessment.  Dr. McDonald never indicated that claimant was "willing and able" to seek employment.  To the contrary, Dr. McDonald clearly stated that plaintiff reported being *unable* to work and viewed herself as disabled. Claimant did tell Dr. McDonald that she was considering starting volunteer work with Big Brothers/Big Sisters, but that is not the same thing as being "willing and able" to seek employment.  Dr. McDonald also never indicated that claimant maintained normal

---

[16] Tr. 21.
[17] *Id.*
[18] *Id*.
[19] *Id.*

daily activities or a social life. Instead, he stated that claimant had a very limited social life and led a restricted and dependent lifestyle. Further, while some parts of Dr. McDonald's assessment — such as only mild impairment of the ability to understand, remember, and carry out instructions, or moderate impairment of the ability to interact appropriately with supervisors, co-workers, and work pressures — do not indicate disabling limitations, other parts of his assessment do. Specifically, Dr. McDonald's assignment of a GAF score of 50 indicates serious symptoms that might contribute to a disability finding. The court recognizes that a GAF score is only a snapshot of a claimant's level of functioning on the day of the examination, and that the scale does not necessarily correspond to Social Security guidelines for levels of work functioning. Even so, the GAF assessment is at least *some* indication that claimant suffered serious impairments, and the ALJ did not even address it.

Based on the foregoing, the court cannot say that the ALJ's decision to not fully credit Dr. Blanchard's assessment of disabling limitations, and to instead assign more weight to the opinion of Dr. McDonald, the consultative examiner, was supported by substantial evidence. Remand is warranted for the ALJ to give further consideration to the opinions of the two psychologists, and to obtain an additional consultative opinion if one is necessary for a complete understanding of the extent of

claimant's limitations.[20]

Based on the foregoing, the decision of the Commissioner is REVERSED, and this action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

The Clerk of Court is directed to close this file.

DONE this 18th day of June, 2013.

_____
United States District Judge

---

[20] Claimant also asserts that the ALJ erred by failing to recontact Dr. Blanchard for clarification of his opinion. According to claimant, "[f]or the ALJ to dismiss [Dr. Blanchard's] opinion because the ALJ believes it is inconsistent without first recontacting the source is egregious error." Doc. no. 8 (claimant's brief), at 10 (alteration supplied). That is not an accurate statement of the law. Social Security Ruling 96-5p, on which claimant herself relies, states, in pertinent part, that "[f]or treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and *the bases for such opinions are not clear to us*." SSR 96-5p (alteration and emphasis supplied). There is no indication that the ALJ found Dr. Blanchard's assessment to be *unclear*; instead, he concluded that the assessment was not supported by the record. There was therefore no need for the ALJ to recontact Dr. Blanchard for any further explanation. *See Shaw v. Astrue,* 392 F. App'x 684, 688-89 (11th Cir. 2010). Even so, the court finds that remand was warranted on other grounds.